# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                          )
WILLIAM PIERCE,                           )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )          Civil Action No. 13-CV-0134 (KBJ)
                                          )
DISTRICT OF COLUMBIA,                     )
                                          )
                    Defendant.            )
                                          )
_____ )

## MEMORANDUM OPINION AND ORDER

Defendant has filed a motion for reconsideration (ECF No. 95) of the

Memorandum Opinion and Order that this Court issued publicly on September 11, 2015

(ECF Nos. 88, 90).  Motions for reconsideration of court orders that "do not constitute

final judgments in a case" are governed by Federal Rule of Civil Procedure 54(b),

*Prince George's Hosp. Ctr. v. Advantage Healthplan Inc.*, 985 F. Supp. 2d 38, 42

(D.D.C. 2013) (internal quotation marks and citation omitted), and "[r]elief under Rule

54(b) is available as justice requires, which amounts to determining, within the Court's

discretion, whether reconsideration is necessary under the relevant circumstances." *Id.*

(internal quotation marks and citation omitted).  It is well established that this standard

may be satisfied "where the court has patently misunderstood the parties, made a

decision beyond the adversarial issues presented, made an error in failing to consider

controlling decisions or data, or a controlling or significant change in the law has

occurred." *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 210 (D.D.C. 2013)

(internal quotation marks, citation, and alterations omitted).  Defendant suggests that

two of these circumstances support its motion: that this Court has made a decision that transcends the boundaries of the issues that the parties addressed at summary judgment (*see* Def.'s Mem. in Supp. of Mot. for Reconsideration ("Def.'s Mem."), ECF No. 95-1, at 3–5), and that the Court has misunderstood Defendant's arguments (*see, e.g.*, Transcript of Reconsideration Motion Hearing ("Motion for Reconsideration Transcript"), ECF No. 106, at 10–11, 14, 72, 74).  For the reasons explained below, this Court finds that neither of these reasons for reconsidering this Court's ruling is present in this case.

First of all, this Court's decision is well within the scope of the issues that were presented in the pleadings and cross-motions for summary judgment.  Plaintiff's complaint brings claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") that are based on Defendant's alleged failure to provide accommodations to Plaintiff—who is profoundly deaf—in accordance with the requirements of those statutes.  (*See* Compl., ECF No. 1, ¶¶ 1, 9, 15, 49, 50.)  At summary judgment, Plaintiff repeatedly argued that Defendant had an "*affirmative*" obligation to provide accommodations for Plaintiff under the ADA and the RA.  (*See* Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J., ECF No. 58, at 8, 10 (emphasis in original); *see also* Pl.'s Reply Mem. in Further Supp. of Pl.'s Mot. for Partial Summ. J., ECF No. 66, at 5, 17, 19.)  Moreover, from the outset, Plaintiff maintained that Defendant's statutory obligation included the duty to "take appropriate steps to ensure that communications with [inmates] with disabilities are as effective as communications with others."  (Compl. ¶ 10 (quoting 28 C.F.R. § 35.160(a)(1)); *see also* Pl.'s Mem. in Supp. of Pl.'s Mot. for Partial Summ. J., ECF No. 47-2, at 12, 27; Pl.'s Mem. in Opp. to

Def.'s Mot. for Summ. J. at 6, 11, 24, 27; Pl.'s Reply Mem. in Further Supp. of Pl.'s

Mot. for Partial Summ. J., ECF No. 66, at 13.)

These claims and their supporting arguments clearly raised the question of what,

if anything, the ADA and RA and their accompanying regulations require of prisons

regarding the provision of accommodations for deaf inmates.  Moreover, at the hearing

this Court held on the parties' cross-motions, Plaintiff's counsel specifically described

what, in his view, the law requires prison officials to do when a plainly disabled inmate

such as Plaintiff is taken into custody.  (*See* Transcript of Summary Judgment Motion

Hearing ("Motion for SJ Transcript"), ECF No. 80, at 38 (explaining that "when Mr.

Pierce showed up" prison employees needed to engage with him regarding his

accommodation needs in order to avoid being deliberately indifferent to his rights).)[1]

The Court also repeatedly *asked* both parties about Defendant's statutory duties with

respect to assessing the accommodation needs of disabled inmates.  (*See, e.g.,* Motion

for SJ Transcript at 52–53; 62–64; 80–81.)[2]  Thus, the Court's legal analysis in the

---

[1] Plaintiff's counsel first discussed the regulatory scheme that establishes the rights of disabled individuals and the deliberate indifference standard for obtaining damages for violating those rights, and then stated:

> If they had been doing business the way they should be doing, if they had not been deliberately indifferent when Mr. Pierce showed up, Dr. Doe, Ms. Tutwiler under the D.C.[] regulations should have sat down with him and said, Okay, we see that you are profoundly deaf.  We have to provide you with the following notice.  You have a right to an interpreter if you need one. Do you need one?  That's what they were supposed to do.  That was never done. None of that was ever done.  That's in the D.C. regulations.

(Motion for SJ Transcript at 38.)

[2] One such exchange transpired as follows:

> MS. ORCUTT [Defendant's counsel]: . . . [W]hat the law requires is that the entity provide accommodations that are necessary for the individual to derive the benefits of the programs. And so, again, you have to go back to whether the accommodation was something that that specific inmate needed for that specific purpose. . . .

> THE COURT: . . . How is it that the District determines what an inmate needs?  If we're going to go with the needed test, what does this inmate need, that's what the ADA requires us to

Memorandum Opinion in this matter—*i.e.,* that a prison violates the ADA and RA as a matter of law when its personnel fails to engage with an obviously disabled individual regarding his need for accommodation and otherwise neglects to assess such an individual's need for accommodation when he is taken into custody—was clearly within the scope of the issues that the parties presented at summary judgment, and that legal analysis led inexorably to the Court's conclusion that Defendant had violated the ADA and RA here because it was an undisputed fact that the District's prison staff had failed to engage in any such assessment with respect to Pierce.  (*See* Memorandum Opinion, ECF No. 90, at 36–37 (holding that "prison officials have an affirmative duty to assess the potential accommodation needs of inmates with known disabilities who are taken into custody and to provide the accommodations that are necessary for those inmates to access the prison's programs and services, without regard to whether or not the disabled individual has made a specific request for accommodation and without relying solely on the assumptions of prison officials regarding that individual's needs[,]" and therefore, that the District had violated the RA and ADA as a matter of law "because it is undisputed that the District's employees and contractors did no such thing when Pierce arrived" at the prison).

This Court also understood Defendant's position on this legal issue, which was made entirely plain at the summary judgment hearing.  The Court specifically asked Defendant's counsel numerous times whether the prison had any duty under the ADA and RA to evaluate or assess the needs of obviously disabled inmates for the purpose of

provide, then doesn't that put the burden on the District to have some sort of comprehensive program of evaluation to determine what an inmate needs?

(Motion for SJ Transcript at 62.)

determining what accommodations might be necessary for them.  (*See, e.g.*, SJ Transcript at 52-53 ("THE COURT: . . . But at the very least even if we go with whether [an interpreter] was necessary, which appears to be the District's position, I'm trying to understand the District's responsibility for determining what was necessary. And [Plaintiff's counsel] says you all didn't even have some sort of assessment of [Plaintiff's] needs in regard to accommodation.  Do you deny that that's the case? In other words, did you have—was there some intensive effort made by the District to evaluate what would actually be needed for [Plaintiff] in this environment?").)  In response to this line of inquiry—which clearly concerned the Court—the District's counsel repeatedly asserted that, unless and until the inmate *requested* a specific accommodation, the prison did not have any legal duty to evaluate the accommodation needs of disabled inmates such as the Plaintiff.  (*See* SJ Transcript at 81 ("THE COURT: [D]o [you] have an obligation to assess deaf inmates when they come in to determine what is necessary for them[?]  And you say no, we only have to do that when they request it.  Is that your answer?  MS. ORCUTT: Yes."); *see also id.* at 53 ("MS. ORCUTT: Well, what was evaluated was when he requested it in accommodation, whether it was necessary for him and whether it could be provided.  And in the cases in which he did request the accommodations, such as the interpreter for anger management, he was provided it.  When he requested the TTY device, he was provided it.").)   The District appears to have backtracked from that position now—its new counsel stated at the hearing on the motion for reconsideration that a request is not required (*see* Motion for Reconsideration Transcript at 25); that the District used "common sense" to make "informal assessments" of Pierce's need for accommodation

continuously throughout his time in custody (*id.* at 28–29, 33); and that, in any event, the District had provided Pierce with equal access to its programs and services (*see id.* at 24).  But counsel's simultaneous suggestion that the Court misheard or misunderstood the statements that the District previously made about its lack of any obligation to assess and accommodate obviously disabled inmates absent a request (*see id.* at 10–11, 14, 34, 72, 74) is unfounded, and therefore unavailing.

Nor is Defendant correct on the merits of its (prior) contention that the prison has no duty under the ADA or RA to evaluate the accommodation needs of an obviously disabled inmate, without a specific request for accommodation.  As mentioned, the District now appears to concede as much. (*See id.* at 24–25, 33–34.)  And Defendant's briefs on the motion for reconsideration, which generally cite inapposite cases, do little to persuade this Court that the applicable statutes and regulations permit prison officials to stand idly by and forgo making a concerted and informed effort to evaluate a profoundly deaf inmate's need for accommodation when such an individual is placed in their custody.  *See, e.g.*, 28 C.F.R. § 35.160 (imposing on public entities an affirmative obligation to "take appropriate steps" in order to ensure that a disabled individual's communication difficulties are accommodated); *see also* Memorandum Opinion at 36–37 ("[T]his Court squarely rejects the legal position that the District seeks to advance in this action, which is, in essence, that the [department of corrections] acts consistently with [the RA and ADA] when it takes custody of an obviously disabled prisoner without undertaking any evaluation of that inmate's needs and the accommodations that will be necessary to ensure that he or she has meaningful access to prison services, and instead,

provides a random assortment of auxiliary aids upon request at various times based primarily on considerations of its own convenience.").

Finally, with respect to Defendant's challenge to the Court's alternative holding (*i.e.,* that no reasonable jury could find on this record that Pierce had failed to request an interpreter or that he did not need one), Defendant maintains that this part of the Court's order should be reconsidered because the facts are such that a reasonable jury could, indeed, find that Pierce did not request an interpreter and did not need one.  (*See* Def.'s Mem. at 11–18.)  This assertion is simply and solely that this Court got it wrong when it concluded otherwise, and it is well established that such assertions of error, standing alone, are insufficient to carry a Rule 54(b) motion.  *See Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.").[3]

Accordingly, and for all of these reasons, it is hereby

**ORDERED** that Defendant's [95] Motion For Reconsideration is **DENIED**.

Date: November 25, 2015                                      *Ketanji Brown Jackson*
                                                            KETANJI BROWN JACKSON
                                                            United States District Judge

---

[3] Defendant has also failed to convince this Court that it needed to go *beyond* its alternative holding, and thus should have determined specifically whether or not the record supported a violation of the ADA and RA with respect to the provision of a TTY machine, visitation rights, and visual alarms, in addition to the District's alleged failure to provide an interpreter for Pierce.  (*See* Def.'s Mem. at 17 ("[T]he District respectfully submits that the Court should have made express findings with respect to the other specific accommodations Pierce alleges that he was denied.").)  Even assuming that this claim of error is a valid basis for a motion for reconsideration, Defendant has not pointed to cases or rules that indicate that it was procedurally improper for the Court to grant summary judgment to Plaintiff on Counts I and II of the complaint based on the record evidence related to the interpreter accommodation without addressing each of the other instances of Defendant's alleged failure to accommodate, and the Court is not aware of any.