# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WILLIAM PIERCE,                )<br>                                             )<br>         Plaintiff,                   )<br>                                             )<br>    v.                                      )<br>                                             )<br>DISTRICT OF COLUMBIA,    )<br>                                             )<br>         Defendant.                )<br>                                             ) | Civil Action No. 13-cv-0134 (KBJ) |

## ORDER REGARDING TRIAL PROCEDURES

    In order to administer the jury trial in this civil action in a fair, just, and efficient manner, it is hereby

    **ORDERED** that the parties shall comply with each of the following procedures and instructions.

1. Trial Schedule.  The jury trial in this matter will begin at **9:30am** on **May 2, 2016**, **in Courtroom 17**.  Unless the parties are otherwise notified, the Court will convene trial from **9:30am** to **12:30pm** and **1:30pm** to **4:30pm**, Monday through Friday, with a brief mid-morning and mid-afternoon recess.

    a. Counsel should be present in the courtroom each morning by **9:15am** to address any preliminary matters.  Trial before the jury will convene promptly at the designated time on each trial day to avoid keeping the jury waiting.  Counsel must be in the courtroom seated at their respective counsel tables at least 5 minutes before the Court is scheduled to resume after a recess.

    b. Counsel should be prepared to deliver opening statements as soon as the jury has been selected and impaneled.  Opening statements shall not exceed **45 minutes per party**.

    c. Immediately after opening statements, Plaintiff should be prepared to call the first witness.

2. General Courtroom Rules.  The Court expects the parties to exercise civility at all times, and to abide by the following:

    a. Unless leave is otherwise granted, counsel shall:

      i. Examine witnesses or address the jury from the lectern;

     ii. Obtain permission before approaching a hostile or adverse witness;

    iii. Stand when raising objections;

    iv. Remain seated when the jury is entering or leaving the courtroom;

     v. Remain in the courtroom once Court is in session;

    vi. Direct all statements to the Court rather than to the opposing party;

   vii. Refer to witnesses over the age of 18, including their client(s), as "Mr." or "Ms." rather than by first name or nickname; and

  viii. Be civil, respectful, and polite toward all participants in the case at all times.

  b. Counsel shall *not*:

      i. Make statements of personal belief to the jury or express a belief concerning the credibility of a witness;

     ii. Appeal to the self-interest of the jury; or

    iii. Make racial or political comments.

  c. All participants in the case shall refrain from making oral comments or facial expressions, and should not engage in any conduct that could be interpreted as conveying a comment about the conduct of the trial.

  d. With the exception of the parties or their representatives, all witnesses must remain outside the courtroom except when testifying. *See* Fed. R. Evid. 615.

3. <u>Jury Selection Process</u>. An outline of the jury selection process to be used in this civil matter is set forth in Appendix A to this Order. **Jury selection will begin promptly at 9:30am on May 2, 2016**.

4. <u>Statement of the Case</u>. The Court intends to describe the case to the venire panel as follows:

"This is a civil case in which the plaintiff is seeking monetary damages. The plaintiff is William Pierce and the defendant is the District of Columbia. Mr. Pierce is deaf. For seven weeks, between February and March of 2012, Mr. Pierce was incarcerated at the District of Columbia Jail and the Correctional Treatment Facility here in the District of Columbia. Mr. Pierce claims that during that time, the District of Columbia (through the correctional facility employees and contractors) discriminated against him based on his disability, in

2

    violation of his rights under the Americans with Disabilities Act and the Rehabilitation Act.  This Court has already found as a matter of law that the District of Columbia violated his rights under those statutes.  The sole purpose of this trial is to determine the amount of compensation, if any, that the District of Columbia should pay to Mr. Pierce for the violation of his rights."

5. <u>Voir Dire Questions</u>.  Attached to this Order as Appendix B is a list of the questions the Court intends to pose collectively to the venire, subject to any objections or proposed modifications by the parties.  If there are any objections to the questions, the parties must confer and file a joint statement listing such objections **by 5:00pm on April 15, 2016**.  The statement shall indicate the nature of each objection along with any proposed modification.

6. <u>Exhibit & Witness Lists</u>.

   a. The parties shall mark all exhibits numerically and, **at or before 9:15am on the morning that trial begins**, the parties shall provide the Court with an exhibit list that is formatted in the preferred manner and that identifies each exhibit by number, provides a brief description of each exhibit, and correlates each exhibit with the relevant counts.

   b. Also at that time, the parties shall provide the Court with a final list of witnesses in the order in which the parties plan to call them.  As trial proceeds, the parties may, in good faith, change the intended order of witnesses.

   c. Any exhibits or charts to be used in opening statements must be cleared with counsel for the other side prior to the commencement of trial.  Any objections to such exhibits shall be raised with the Court during the first recess after jury impanelment but prior to opening statements.

7. <u>Opening Statements And Closing Arguments</u>.

   a. The Court will intervene *sua sponte*, if necessary, to correct a party's failure to adhere to basic legal principles.

   b. In making closing arguments, counsel shall be limited by the evidence presented during trial and are reminded of the prohibition against appealing to the passions or prejudices of the jurors.

   c. The Court will provide the jury with final instructions *after* the parties' closing arguments.

8. <u>Technical Equipment</u>.  Parties who intend to use technical equipment (e.g., overhead projectors, video display monitors, etc.) at trial must contact the Courtroom Technology Administrator of the Clerk's Office at (202) 354-3019.

9. <u>Motions In Limine During Trial</u>.  During trial, the parties may encounter issues with respect to testimony or evidence that could not reasonably have been anticipated or objected to prior to trial.  In that event, the parties shall adhere to the following procedure:

   a. As soon as possible, and **by no later than 6:15pm** the night before the testimony or evidence at issue is expected to be introduced, counsel shall meet and confer in a good faith attempt to resolve any dispute without judicial intervention.

   b. As soon as possible, and **by no later than 7:15pm** the night before the testimony or evidence at issue is expected to be introduced, the moving party shall **send an email** to Chambers (kbj_chambers@dcd.uscourts.gov), copying the other party and notifying the Court of the dispute by appending a succinct but complete statement of the factual and legal bases for its objection, with precise citations to the record and appropriate legal authority.

   c. Unless otherwise ordered, the Court will meet with the parties at 9:15am on the morning the disputed testimony or evidence is expected to be introduced and will rule upon or otherwise resolve the issue.

10. <u>Evidentiary Objections</u>.  At trial, counsel shall adhere to the following general rules with respect to evidentiary objections:

    a. Counsel shall stand to state any objections.

    b. Evidentiary objections will not be argued in the presence of the jury—counsel must state the legal basis for their objections in a word, or at most a phrase, without elaboration or argument.  If the jury has been excused, counsel may explain or amplify their objections on the record in order to preserve arguments for appellate review.

    c. Bench conferences during trial are generally discouraged but may be permitted when necessary to resolve an objection.  Counsel should not expect requests to approach the bench to be routinely granted, and should instead consider whether the issue counsel wishes to address at the bench can wait until the jury is excused for recess.

    d. To the extent that an evidentiary objection may reasonably be anticipated, counsel must raise such an objection before the scheduled start of the trial day, during the lunch break, or at the conclusion of the trial day and must do

4

so in accordance with the procedures governing motions in limine. (*See* ¶ 9, *supra*.)

11. <u>Witness Examination</u>.

    a. Pursuant to Local Civil Rule 83.3, unless otherwise permitted by this Court, only one attorney for each side shall examine or question a witness during trial.

    b. A party calling a witness must arrange for the witness's presence until cross-examination is completed. Failure to have a witness present for cross-examination is grounds for striking the witness's testimony. Absent extraordinary circumstances, the Court will not recess simply because a witness is not available.

    c. During direct or cross-examination of a witness, counsel shall *not*:

        i. Be allowed to *re*cross-examine any witness;

        ii. Show to the jury any document or other item that has not yet been offered and received into evidence;

        iii. Improperly incorporate facts into questions so as to put before the jury information that has not been received into evidence;

        iv. Use an objection as an opportunity to argue or make a speech in the presence of the jury.

12. <u>Discussions With Witnesses</u>. Counsel calling a witness shall have no further discussions with that witness concerning the case or any aspect of his or her testimony after the witness has been tendered for cross-examination and until such time as the witness has been tendered back for redirect examination. At all other times, within the bounds of governing ethics and the law, counsel may pursue discussions with witnesses during trial.

13. <u>Jury Instructions</u>. If events during trial necessitate a previously unanticipated jury instruction, the party requesting the instruction must provide the Court with the text of the proposed instruction or the Court will consider the request waived. If a party would like the unanticipated instruction to be included in the Court's final instructions to the jury, that party bears the responsibility of making such a request to the Court **no later than 4:00pm on the day before final instructions are to be given**. The Court will give final jury instructions following the parties' closing statements.

14. <u>Motions Hearing and Final Pre-Trial Conference</u>. There will be a hearing on the pending motions in limine on **Thursday, April 21, 2016, at 10:30am in**

**Courtroom 17.**  The Court will hear from the parties and rule on any pending motions and any unresolved, ripe evidentiary objections during this hearing. The final pre-trial conference in this matter will be held on **Friday, April 29, 2016, at 10:30am in Courtroom 17**.  Prior to the final pre-trial conference, the Court will provide counsel with draft copies of anticipated jury instructions and the verdict form, which will be discussed both during the final pre-trial conference and during a conference that the Court will hold during trial prior to giving the jury final instructions.  Because this Court's goal is to avoid delay during the trial, the final pre-trial conference will be devoted to resolving all issues that have been raised prior to trial or that can reasonably be anticipated to arise during trial, and the parties are advised to bring any and all such issues to the Court's attention for resolution during the final pre-trial conference.

DATE:  April 7, 2016

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

# APPENDIX A
## Jury Selection Process

1. <u>Number of Jurors Seated</u>. Rule 48 of the Federal Rules of Civil Procedure requires that a unanimous civil verdict be returned by a jury of at least 6 members and that the jury begin with no more than 12 members. *See* Fed. R. Civ. P. 48. Accordingly, to provide for the sickness, unexpected absence, or disability of any juror, a jury of 8 will be selected. Consistent with the Federal Rules of Civil Procedure, no alternates will be selected. *See* Fed. R. Civ. P. 47 advisory committee's note (1991).

2. <u>Venire Panel</u>. The number of qualified potential jurors is computed by totaling the following: the number of jurors to be selected (8) and the number of peremptory challenges (3 per party, or 6 total). *See* Fed. R. Civ. P. 47(b); 28 U.S.C. § 1870. Consequently, the venire panel should consist of at least 14 prospective jurors. Out of an abundance of caution, Judge Jackson will voir dire and qualify a venire panel of 16 prospective jurors in this case.

3. <u>Venire List</u>. When the prospective jurors arrive from the Jury Office, counsel will be provided with the written list of the venire panel ("venire list").

4. <u>Juror Seating Order</u>. The prospective jurors will be seated in the courtroom by the courtroom deputy in the order in which their names appear on the venire list. The seating arrangement will start with the first prospective juror being placed in the first row of seats against the wall located on the left side of the courtroom as viewed from the bench looking toward the rear of the courtroom. Subsequent prospective jurors will be seated sequentially in rows in the order listed on the venire list, from the wall to the center aisle until all seats are occupied. The same seating arrangement will be employed on the opposite side of the courtroom if that space is needed to seat the entire venire panel.

5. <u>Administration Of Oath And Preliminary Matters</u>. After the prospective jurors are seated, the courtroom deputy will administer the oath. The Judge will then make a statement about the importance of jury service and explain the selection process, including the purpose of the notecard and pencils provided to each prospective juror by the courtroom deputy.

6. <u>Voir Dire Questions To Panel</u>. Judge Jackson will decide what voir dire questions will be asked after consideration of the proposed voir dire questions submitted by the parties as part of the Joint Pre-Trial Statement. The Judge will ask the prospective jurors collectively the voir dire questions. The jurors will be instructed to mark on the notecard provided by the courtroom deputy any question to which the juror has an affirmative answer in order to facilitate the

process of obtaining further responses. After all of the voir dire questions have been asked, Judge Jackson and counsel will move into the jury room, along with Mr. Pierce, the ASL translator, a designated representative of Defendant, and other required court staff (i.e., the court reporter), and the courtroom deputy will escort the jurors into the well of the courtroom by rows, and then into the jury room individually, to be questioned. (This process is being provided in this case in lieu of individual questioning at the bench in order to preserve the privacy of individual jurors while also providing a translation of the questioning for Mr. Pierce.) Judge Jackson will ask questions about any affirmative response indicated on the notecard, and counsel will be permitted to ask limited follow-up questions, *see* Fed. R. Civ. P. 47(a), but counsel are advised not to re-ask questions that have already been answered. When each prospective juror is finished with questioning, the individual will return to his or her original seat in the courtroom, regardless of whether he or she is considered qualified to serve. The courtroom deputy will continue to direct individual prospective jurors to the bench for questioning until 16 prospective jurors have been qualified.

7. <u>Strikes For Cause</u>. Strikes for cause will be entertained immediately after the individual questioning of each prospective juror and may be ruled upon before the prospective juror is asked to rejoin the venire panel.

8. <u>Peremptory Challenges</u>. Each side will have 3 peremptory challenges. *See* Fed. R. Civ. P. 47(b); 28 U.S.C. § 1870. Once the Court has qualified 16 prospective jurors, the courtroom deputy will provide each party a document upon which they simultaneously should record their respective peremptory strikes. Parties are permitted to exercise their peremptory strikes only as to the 16 qualified prospective jurors.

9. <u>*Batson* Challenges</u>. Prospective jurors who were stricken on a peremptory challenge will not be excused from the courtroom until the entire selection process has been completed, including resolution of any challenges pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). In the event a *Batson* challenge is raised and found to be meritorious, counsel are forewarned that one remedy the Court may employ is to impanel the improperly stricken juror and preclude the party who improperly exercised the strike from excluding that juror. Other remedies—including the imposition of monetary sanctions—are also available to the Court to address *Batson* violations. Counsel should therefore be mindful of their obligation not to exercise peremptory challenges that seek to exclude jurors on the basis of race or gender.

**APPENDIX B**
**Voir Dire Questions**

Introduction:

Ladies and gentlemen, I am Judge Ketanji Brown Jackson and you have been called here for possible selection as a juror in the civil case of *William Pierce v. District of Columbia*.

The process of jury selection is known as the voir dire process, and the object is to select jurors who have no prior knowledge about this case and no bias toward either side.  In short, it is our aim to select a jury that will reach a verdict based solely on the evidence presented in this courtroom and the law as I instruct you.  During the voir dire process you will be introduced to all of the participants in the trial, and I will ask you a series of questions.  Listen carefully, and if you have an affirmative answer to any of the questions that I ask you, please write down the number of the question on the notecard that you have been given.  Before we get to the questions, I am going to explain briefly what this case is about.

This is a civil case in which the Plaintiff is seeking monetary damages.  The Plaintiff is William Pierce and the Defendant is the District of Columbia.  Mr. Pierce is deaf.  For seven weeks, between February and March of 2012, Mr. Pierce was incarcerated at the District of Columbia Jail and the Correctional Treatment Facility here in the District of Columbia.  Mr. Pierce claims that during that time, the District of Columbia (through the correctional facility employees and contractors) discriminated against him based on his disability, in violation of his rights under the Americans with Disabilities Act and the Rehabilitation Act.  This Court has already found as a matter of law that the District of Columbia violated his rights under those statutes.  The sole

purpose of this trial is to determine the amount of compensation, if any, that the District of Columbia should pay to Mr. Pierce for the violation of his rights.

1. From what I have told you so far, do you believe that you have heard anything about this case?

2. The Plaintiff in this case is **William Pierce**.  Do you know or have you heard of the Plaintiff?

3. The Plaintiff in this case is represented by the law firm **Steptoe & Johnson**, specifically **James Rocap III**, **Damon Kalt**, **Nina Thanawala**, and **Nick Petts**.  PLEASE STAND.  Do you know any of these individuals, either personally or professionally, or have any affiliation with this law firm?

4. **Arthur B. Spitzer**—a lawyer who works for the American Civil Liberties Union of the National's Capitol—has also worked on this matter on behalf of Mr. Pierce.  Do you know Mr. Spitzer, either personally or professionally, or have any affiliation with the American Civil Liberties Union of the National's Capitol?

5. The Defendant in this case is represented by two law firms and the Office of the Attorney General for the District of Columbia.  First, **Daniel Struck** and **Anne Orcutt** are from the law firm of **Struck Wieneke & Love**.  PLEASE STAND.  Second, **Terrence O'Connell** is from the **O'Connell & O'Connell Law Firm**.  PLEASE STAND.  Third, **Douglas Rosenbloom** is from the **Office of the Attorney General for the District of Columbia**.  PLEASE STAND.  Do you know any of these individuals, either personally or professionally, or have any affiliation with these law firms or the D.C. Office of the Attorney General?

6. Three other attorneys—**Matthew D. Berkowitz** and **Marina Del Valle Bravo** of the law firm of **Carr Maloney PC**, and **Grace Graham** of the **Office of the Attorney General for the District of Columbia**—have also been involved in this case on behalf of the District of Columbia.  Do you know any of these individuals, either personally or professionally, or have any affiliation with Carr Maloney or the D.C. Office of the Attorney General?

7. You may hear testimony from or about a number of people during the course of this trial.  Mr. Rocap will now identify for you the names of people who may testify for the Plaintiff, and Mr. Struck will then read for you the names of people who may testify for the Defendant.  Listen carefully and, if you know any of the people named, please mark your notecard beside the **number 7**.

8. Do you know or do you recognize any other member of the prospective jury panel?

9. Do you know anyone else who is in the courtroom today, such as any of the courtroom clerks; the translators; the courtroom reporter; or me, the Judge?

10. The lawyers predict that the presentation of evidence in this trial should last approximately **5 days**, which would take us into early next week, and I think this is a fair estimate, but it could run shorter or longer. The jury will sit Monday through Friday from 9:30am to 4:30pm for as long as it takes to hear the evidence in the case. The length of jury deliberations following the presentation of evidence at trial will be determined by the jury itself. Do you have an urgent or extremely important matter to attend to, such that you could be faced with a hardship if selected for the jury in this case?

11. Do you have any vision or hearing problems, or any other physical or medical problems, that might interfere with your ability to hear or understand what the witnesses say in this case or to give your full attention to the case?

12. Do you have any other health problems which would interfere with your ability to sit as a juror in this case?

13. Do you have any difficulty in reading, speaking, or understanding English?

14. Have you, any members of your family, or any close friends ever studied law, had any legal training, or been employed by a lawyer or a law firm, worked in a courthouse, been a paralegal, served as a legal secretary, or performed legal investigative work?

15. Do you have any moral, religious, or ethical beliefs that prevent you from sitting in judgment of another person?

16. Do you have any personal, cultural, or religious bias that would prevent you from treating the testimony of all individuals equally and fairly?

17. If you have previously been a juror in a civil or criminal trial, was there anything about your experience that might affect your ability to serve fairly and impartially in this case?

18. If you, any members of your family, or any close friends have been a plaintiff, defendant, or witness in a civil or criminal case, would that prevent you from fairly and impartially deciding this case based upon the evidence presented and the law as instructed by this Court?

19. Have you, any members of your family, or any close friends been involved in a lawsuit or other controversy regarding the provision of accommodations to

a person with a disability?

20. Have you, any members of your family, or any of your close friends ever been the subject of a claim brought by someone who asserted that they had been discriminated against on the basis of a disability?

21. Do you have any views or beliefs that would prevent you from awarding monetary damages to a plaintiff in a lawsuit, if the facts and the law as instructed by this Court required you to do so?

22. Each juror must hear the evidence in this case and apply the law, as instructed by this Court, without being influenced in your decision by sympathy, passion or prejudice for or against the plaintiff or defendant, or by any preconceived notions about the law.  Will you have any difficulty complying with this requirement?

23. Is there anything else about the nature of this case or about the parties involved that would make it difficult for you to remain objective or to render a verdict based solely upon the evidence presented?

24. Are you aware of or have you heard or read about any other lawsuits or cases related to the treatment of inmates in District of Columbia jails?

25. Have you, any members of your family, or any close friends ever worked at the District of Columbia jail?

26. Have you heard of the Corrections Corporation of America or Unity Healthcare?

27. Have you, any members of your family, or any close friends ever spent any time in any jail or prison, as an inmate or otherwise?

28. Have you, any members of your family, or any close friends ever worked in law enforcement?

29. Are you deaf or hearing impaired, or do you have any family or close friends who are deaf or hearing impaired?

30. Do you have any other disability for which you have received accommodation, or does any member of your family or close friends have such a disability?

31. In general, do you have any negative opinions about the prison or jail system in the District of Columbia, or about the way inmates are treated in the District of Columbia prisons or jails?

32. Are you able to understand or communicate in American Sign Language, or

do you have a family member or close friend who can understand or communicate in American Sign Language?

33. Have you ever had a conversation with a person who is deaf?

34. Do you know of any situation where a deaf or hearing-impaired person was denied accommodation for his or her hearing disability?

35. Do you have any opinions, positive or negative, about persons who are deaf or hard of hearing that would affect your ability to be fair to both sides in this case?

36. Do you have a strong opinion, positive or negative, about persons with disabilities who file lawsuits related to their disabilities or otherwise demand that they be treated in accordance with what they believe the disability laws require?

37. Do you have any experience, knowledge, or training in the areas of disability accommodations, disability discrimination, or hearing loss?

38. Do you have an opinion, positive or negative, on whether a person who has pled guilty to a misdemeanor or spent time in jail because of a misdemeanor has more or less credibility?

39. Do you think you can be fair to the plaintiff even though he was an inmate?

40. Do you have an opinion regarding whether a prison inmate, a prison guard or corrections officer, or a law enforcement official, has more or less credibility when testifying by virtue of this status?

41. Do you have any opinions, positive or negative, about persons who are gay, lesbian, bisexual, or transgender that would affect your ability to be fair to both sides in this case?

42. Do you know of any reason, or has anything occurred to you during this questioning, that might in any way prevent you from following my instructions on the law and being completely fair and impartial as a juror in this case?